IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHALE J. ANDERSON, BH-9234, )
    Petitioner, )
     )
    v. ) Civil Action No. 09-113
     )
SUPERINTENDENT BRITTON, et al., )
    Respondents. )

Memorandum and Order

Mitchell, M.J.:

Michale J. Anderson, an inmate at the State Correctional Institution at Houtzdale has presented a petition for a writ of habeas corpus. For the reasons set forth below, the petition will be dismissed and because reasonable jurists could not conclude that a reasonable basis for appeal exists, a certificate of appealability will be denied.

Anderson is presently serving a life sentence imposed following his conviction, by a jury of criminal homicide at No. CC198912989, in the Court of Common Pleas of Allegheny County, Pennsylvania. This sentence was imposed on August 18, 1998.[1]

The history of this prosecution is somewhat complex. The petitioner was originally convicted on June 18, 1990. On appeal, the Superior Court vacated the sentence and remanded for a new trial, and the Pennsylvania Supreme Court affirmed the award of a new trial.

On remand, a suppression hearing was conducted on April 29, 1998, and the petitioner's motion to suppress his statement was denied. He proceed to trial and on June 12, 1998, a jury

---

[1] See: Petition at ¶¶ 1-7.

1

convicted him of first degree murder and the instant sentence was imposed. A notice of appeal to the Superior Court was filed in which the issues raised were:

> I. The trial court erred in admitting into evidence statements made by the appellant without the benefit of consulting an informed and interested adult prior to waiving his constitutional rights.
>
> II. The trial court erred in admitting into evidence inflammatory photographs of the victim at the scene as well as autopsy photographs.
>
> III. The trial court erred in admitting into evidence inflammatory anti-semitic material purported to belong to appellant.
>
> IV. The verdict of guilty of murder of the first degree was against the weight of the evidence.
>
> V. The evidence was insufficient to sustain a verdict of guilty to murder of the first degree.[2]

On February 2, 2000, the judgment of sentence was affirmed.[3] Leave to appeal to the Pennsylvania Supreme Court was sought in which these same issues were raised.[4] Leave to appeal was denied on July 11, 2000.

A post-conviction relief act petition was filed on or about July 1, 2001. That petition was amended on April 7, 2005 and dismissed on February 21, 2006.[5]

An appeal was taken to the Superior Court in which the issues presented were:

> I. Prior counsel gave ineffective assistance for failing to argue that Dr. Michael Welner's testimony was improper.

---

[2] See: Exhibit 4 to the response.

[3] See: Exhibit 5 to the response.

[4] See: Exhibit 6 to the response.

[5] See: Opinion of the post-conviction court filed on March 30, 2007 which is Exhibit 9 to the response.

2

II. Appellant counsel gave ineffective assistance for failing to raise the ineffective assistance of trial counsel for failing to file a suppression motion to suppress the physical evidence.[6]

The Superior Court remanded the matter to the post-conviction court for a supplemental opinion and possibly an evidentiary hearing but retained jurisdiction.[7] In a supplemental opinion, the post-conviction court again denied relief and a supplemental appellate brief was filed in the Superior Court in which the issues presented were:

I. Prior counsel gave ineffective assistance for failing to argue that Dr. Michael Welner's testimony was improper.

II. Appellate counsel gave ineffective assistance for failing to raise the ineffective assistance of trial counsel for failing to file a suppression motion to suppress the physical evidence.

III. The PCRA court abused its discretion in permitting the Commonwealth to present inadmissible testimony from Dr. Bruce Wright at the PCRA hearing.[8]

On August 15, 2008, the denial of post-conviction relief was affirmed.[9] A petition for allowance of appeal to the Pennsylvania Supreme Court was filed in which these same issues were presented for review.[10] On January 7, 2009, leave to appeal was denied.

The instant petition was executed on January 26, 2009, and in it, Anderson contends he is entitled to relief on the following grounds:

I. Trial court error in permitting Dr. Michael Welner to testify as a psychiatric

---

[6] See: Exhibit 10 to the response.

[7] See: Exhibit 11 to the response.

[8] See: Exhibit 13 to the response.

[9] See: Exhibit 14 to the response.

[10] See: Exhibit 15 to the response.

expert basing his testimony on information he had gathered from others.

II. Ineffective assistance of appellate counsel for failing to argue that trial counsel was provided with an inadequate opportunity to comprehend the psychiatric report of Dr. Welner.

III. Ineffective assistance of trial counsel for failing to seek suppression of evidence seized without petitioner's consent from the home of his girlfriend based on the consent of the girlfriend's father.

IV. Trial court error in not granting a mistrial when Dr. Welner made testimonial references to the petitioner's prior trial.

V. Ineffective assistance of appellate counsel for failing to raise the issue of prosecutorial misconduct in failing to timely provide the defense with a copy of Dr. Welner's rebuttal report.[11]

It is provided in 28 U.S.C. §2254(b) that:

An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

This statute represents a codification of the well-established concept which requires that before a federal court will review any allegations raised by a state prisoner, those allegations must first be presented to that state's highest court for consideration. Preiser v. Rodriguez, 411 U.S. 475 (1973); Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484 (1973); Doctor v. Walters, 96 F.3d 675 (3d Cir. 1996).

It is only when a petitioner has demonstrated that the available corrective process would be ineffective or futile that the exhaustion requirement will not be imposed. Preiser v. Rodriguez,

---

[11] The Commonwealth concedes that the instant petition is timely filed (See: Answer of the Commonwealth at p.10).

4

supra.; Walker v. Vaughn, 53 F.3d 609 (3d Cir. 1995).

If it appears that there are available state court remedies, the court must determine whether a procedural default has occurred. If a procedural default has occurred, the court must determine whether cause or prejudice exists for the default, or whether a fundamental miscarriage of justice would result from a failure to consider the claims. Carter v. Vaughn, 62 F.3d 591 (3d Cir. 1995).

In construing § 2254(d)(1), the Court in Williams v. Taylor, 529 U.S. 362, 412-413 (2000) stated:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In Hameen v. Delaware, 212 F.3d 226, 235 (3d Cir. 2000), the Court determined:

> The Court in Williams v. Taylor held that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, further held that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Thus, under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly

5

established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." The Court in Williams v. Taylor made it clear that the "contrary to" and "unreasonable application"clauses have independent meaning.

In the instant case, it would appear that with the exception of his third argument, i.e., that trial counsel was ineffective for failing to seek to suppress the evidence taken from the home of petitioner's girlfriend, none of the other issues were raised in the state courts for their consideration in the first instance. In Coleman v. Thompson, 501 U.S. 722,750 (1991), the Court held:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.

Because no such showing is made here, the first, second, fourth and fifth issues which the petitioner seeks to raise here are not properly before this Court and do not provide a basis for granting relief here.

The background to this prosecution is set forth in the February 3, 2000 Memorandum of the Superior Court:

> In the early morning hours of October 27, 1989, Anderson took a taxicab to the home of the victim, Karen Hurwitz ("Hurwitz"). On his way to Hurwitz's home, Anderson had the cab stop in the Highland Park area where he retrieved a bag containing various weapons. After arriving at the Hurwitz residence, Anderson removed a Ninja sword and nunchucks from his bag and placed them at the side of the house. Anderson also placed another weapon inside his jacket. Anderson then went into the Hurwitz home.
>
> After speaking with Hurwitz for a few moments, Anderson and Hurwitz agreed to continue their conversation outside so as not to awaken Hurwitz's parents. Once outside, Anderson picked up the Ninja sword and walked with the victim to a gazebo in her yard. As the two conversed, Anderson struck the victim in the head

6

with the ninja sword and repeatedly stabbed her in the torso. When the victim stopped moving, Anderson went into the Hurwitz home, took the keys to the Hurwitz's automobile, and drove away in the vehicle.

The next morning, Anderson voluntarily accompanied police officers from his high school to police headquarters. Upon arriving at headquarters, Anderson confessed to the aforementioned crimes.[12]

As petitioner's post-conviction appellate counsel summarized, "the focal point at trial concerned the mental state of Mr. Anderson as to whether he could form the specific intent to kill.[13]

The petitioner now argues that counsel was ineffective in failing to suppress evidentiary items seized from the home of his girlfriend. As the post-conviction court summarized:

> the incriminating evidence to which the Defendant makes reference is three boxes of the Defendant's belongings that he kept in the bedroom of a friend, Katie Berlin, and that Ms. Berlin's father voluntarily turned over to the police after the Defendant's arrest. Clearly, in light of the fact that Ms. Berlin's parents did not even know that the Defendant occasionally slept in their daughter's bedroom, the Defendant did not have a possessory interest in the Berlin home, nor did he have any expectation of privacy in items that he stored there. Consequently, a suppression motion on this basis would have been denied; and therefore, trial counsel was not ineffective in failing to file such a motion.[14]

This conclusion was affirmed by the Superior Court.[15]

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires

---

[12] See: Exhibit 11 to the response at pp.6-7.

[13] See: Exhibit 13 at p.6.

[14] See: Exhibit 9 to the Response at p.6.

[15] See: Exhibit 11 to the Response at p.8.

7

showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362, 390-91 (2000). Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987), cert. denied, 484 U.S. 863 (1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.")(citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one.")

In his post-conviction petition to the Superior Court, the petitioner framed this issue as follows:

> At Mr. Anderson's trial Katherine Berlin testified that she was the girlfriend of Mr. Anderson (TT.222-223). Berlin saw Mr. Anderson on a nearly daily basis in the months prior to Hurwitz's killing (TT.224-225). Mr. Anderson began sleeping at Berlin's residence albeit without the knowledge of Berlin's parents (TT.223). Berlin's bedroom was on the first floor and her parent's on the second floor

8

(TT.225). Mr. Anderson brought various packaged personal items in bags and boxes, which Berlin kept, under her piano.

At trial Berlin was shown 3 boxes belonging to Mr. Anderson, one of which had marked on it: "mixed stuff, don't touch". Berlin never opened the box (TT.227). According to Berlin, Mr. Anderson came to Berlin's residence on October 26, 1989, changed his clothing and put them in a bag under the piano (TT.233).

At trial Detective Terrance P. O'Leary testified that he had recovered a black ninja suit from Mr. Anderson's backpack located at Berlin's residence (TT.303). He also recovered stars and literature from boxes at Berlin's residence (TT.303). Three of Mr. Anderson's boxes recovered from Berlin's apartment contained Mr. Anderson's clothing and personal items (TT.305). Found also in the boxes were three American Flags: Exhibits 65,66, and 67; On Exhibit 65 was hand printed: "Niggers, spics, Jewish pigs will rape America no more. These will not be the first"; On Exhibit 66 was written: "Long live the white. Fuck the Jews. These will not be the first." TT.307. The Commonwealth argued that the seized items in question went to Mr. Anderson's state of mind and were thus admissible (TT.307).[16]

As post-conviction appellate counsel argued, at trial the admissibility of this evidence was argued, but counsel never asserted the petitioner's Fourth Amendment rights regarding these articles.[17] Additionally, it is argued that no warrant was secured for these items; Anderson had not given his consent for their seizure and the items were delivered to the police by Ms. Berlin's father who had no knowledge that the petitioner was residing in his house.[18] Thus, the question was whether or not petitioner enjoyed a reasonable expectation of privacy in these items and as a result whether his Fourth Amendment rights were violated.

In addressing this issue, the Superior Court wrote:

Anderson did not have a key to the residence; rather, from time to time he would

---

[16] See: Exhibit 10 to the response at p.37.

[17] Id. at p.38.

[18] Id.

9

knock on Berlin's bedroom window and she would let him in without her parents' knowledge. The container Anderson stored were not locked, but "don't touch" was written on the outside of them. Anderson often left his belongings unattended for several days, during which time any member of the household could have accessed them. Anderson was merely a transient guest of Berlin's, who occasionally slept in her bedroom without her parents' knowledge or consent. Thus, we conclude that Anderson had no reasonable expectation of privacy as to the items seized...

Even if Anderson had a reasonable expectation of privacy, however, Berlin's father was authorized to effectuate a valid consent to search unlocked containers located within his home ... Therefore, because the underlying suppression claim lacks merit, neither trial nor appellate counsel can be deemed ineffective for failing to raise this issue.[19]

Accepting as we must the factual determinations of the state courts, 28 U.S.C. 2254(e)(1), a determination must be made as to whether an individual who is neither the owner, lessee, nor occupier of premises has any expectation of privacy in matters stored on the premises with only the consent of the daughter of the owner who, without the owner's knowledge, he occasionally visited.

In <u>Minnesota v. Olson</u>, 495 U.S. 91, 95-96 (1990), the Court held:

Since the decision in *Katz v. United States*, 389 U.S. 347 (1967), it has been the law that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place"... A subjective expectation of privacy is legitimate if it is " ' one that society is prepared to recognize as "reasonable," ' "... (case citations omitted).

Or, as stated in <u>Kyllo v. United States</u>, 533 U.S. 27, 33 (2001), " a Fourth Amendment search does not occur ... unless 'the individual manifested a subjective expectation of privacy in the object of the challenged search,' and 'society [is] willing to recognize that expectation as

---

[19] See: Exhibit 11 to the response at pp.7-8.

reasonable.'"

In the instant case, Anderson occasionally stayed at the Berlin's home. On those occasions he entered by knocking on the daughter's bedroom window and surreptitiously gained entry, and his presence was not a matter of which the senior Berlin's were aware. Under such circumstances it cannot be said that he enjoyed a reasonable expectation of privacy since he was neither the guest of the owner or lessee of the premises, he clearly entered without their authorization and his presence was unknown to them. Thus, because arguing for suppression of the physical evidence was meritless, counsel cannot be found ineffective for failing to raise this "non-issue" and Anderson's claim to the contrary does not provide any basis for relief.

Thus, because the conclusion of the courts of the Commonwealth is not contrary to clearly established federal case law as determined by the Supreme Court, there is no basis for granting relief here.

Accordingly, the petition of Michael J. Anderson for a writ of habeas corpus will be dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability will be denied.

An appropriate Order will be entered.

ORDER

AND NOW, this 1st day of June, 2009, for the reasons set forth in the foregoing Memorandum, the petition for Michael J. Anderson for a writ of habeas corpus is dismissed and because reasonable jurists could not conclude that a basis for appeal exists, a certificate of appealability is denied.

                                                                       s/ Robert C. Mitchell
                                                                       United States Magistrate Judge